SCHOFIELD, Respondent, vs. MILTIMORE, Appellant.

*March 16 — April 25, 1889.*

*Practice: Inconsistent causes of action: General verdict.*

The plaintiff alleged as one cause of action the breach of a promise of marriage, and as another the breach of an agreement to convey certain property to her if she would come to Wisconsin and act as the defendant's housekeeper. At the trial the plaintiff did not elect between the two causes of action. The jury returned a general verdict in her favor assessing her damages at a sum greater than that claimed on either cause of action. *Held*, that, as the two causes of action were inconsistent, the acceptance of a general verdict was irregular, and it should have been set aside and a new trial granted.

APPEAL from the Circuit Court for *Portage* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This action was commenced June 8, 1887. The complaint alleges two causes of action. One is a breach of a promise to marry, made on or about June 1, 1886, for which the plaintiff claims $2,000 damages. The other is a breach of contract made on or before January 1, 1887, to convey to the plaintiff one of two houses and lots, of the value of $2,000, he then owned in Janesville, which she might select, in consideration of her relinquishing her employment in the state of Oregon, where she was then residing and earning $15 per week, and incurring the necessary expense

and loss of time in coming to said Janesville, and promising and agreeing to keep house for the defendant and perform the ordinary and usual household duties.  The complaint alleges that the plaintiff, relying upon said promise to so convey, did relinquish such employment, and did undertake and perform said journey, and did incur such expense and loss of time for the space of six months, and was ready and willing to fully perform her part of said agreement, but that defendant had refused to perform his part, whereby the plaintiff was damaged $2,000.

In addition to denials of each cause of action and other denials, the answer admits that the defendant married another woman, May 4, 1887; that at the times mentioned he resided in Janesville, and owned two houses and lots there. And the answer alleges, in effect, that the defendant's first wife, who was a younger sister of the plaintiff, died July 5, 1885; that a short time thereafter he received a letter from the plaintiff stating that her husband had died, that she was discouraged and disheartened, and did not desire to remain in Oregon, but wanted to come to Wisconsin to live; that the defendant replied that if she wanted to come he would furnish her a home as long as she wanted to stay; that the plaintiff was about fourteen years older than himself, and that he had always treated her as a sister, and so considered her; that he wrote the plaintiff in December, 1886, that he intended to be married to a lady in Chicago the next spring, but that if she wanted to come to Wisconsin he would furnish her a home as long as she remained; that she came in March, 1887, and remained with the defendant, who furnished her a home from that time until May 3, 1887, when she left, and has ever since refused to accept any home that the defendant offered her; that the defendant has at all times been willing to furnish her a home, and as good a home as he is able to furnish.

At the close of the trial the jury returned a verdict in

the words following, to wit: "We, the jury duly impaneled and sworn to try the issues in the above-entitled action, do find for the plaintiff, and assess her damages at the sum of $2,100." From the judgment entered upon the verdict the defendant appeals.

For the appellant there was a brief by *Cate, Jones & Sanborn*, and oral argument by *D. Lloyd Jones*.

For the respondent the cause was submitted on the brief of *James O. Raymond*.

CASSODAY, J. The plaintiff is five years older than the defendant, and was the sister of his first wife. She died in July, 1885, and the plaintiff's husband died a short time before, in Oregon, where he and she then resided. A correspondence commenced between the plaintiff and the defendant in July, 1885, and continued until January 19, 1887. Early in that correspondence the defendant wrote the plaintiff, in effect urging her to come to his house and have and care for everything just as his wife had left them; that if she would come and live with him he would do just the same for her that he would have done for his wife if she had been spared to him; and subsequently, and from time to time, after she had agreed to come, that he would do all he possibly could to make it pleasant for her; that he had two very good houses, and that she could have her choice in them, and that she should come, and come to stay; that if she came, and they got settled, he would have a home as he once had; that if she came he would have some one to take care of what he would get, and that was all he wanted any woman to do; that the home was there, and all she had to do was to come and take it at any time; that when she should inform him of the time of her coming he would fix the house for her, and that she knew that all was for her, and for her only; that he was anxious to see her settled in their own home. The letters contain many simi-

Schofield vs. Miltimore.

lar statements, and many endearing expressions. None of them, however, contain any express promise of marriage. No such express promise is relied upon. The plaintiff's letters to the defendant seem to have been lost.

It is claimed on the part of the plaintiff, in effect, that the jury were authorized to infer an agreement of marriage from the language of the letters; that, even if that is not so, still they were authorized to find from the letters and evidence that the defendant agreed to furnish the plaintiff a home for life, in consideration of her agreeing to leave Oregon and come to Wisconsin and become a housekeeper for defendant.

The alleged agreement to marry, and the agreement to become such housekeeper in consideration of such home so furnished, seem to be entirely inconsistent with each other. If the ambiguous language of the letters had reference to a prospective marriage, then they preclude the idea of a home being thus furnished to her as a mere housekeeper. On the other hand, if such language had reference to such home for her as a mere housekeeper, then they preclude the idea of marriage. The court in effect so charged the jury. They were told that the burden was upon the plaintiff affirmatively to establish to the satisfaction of their "minds, by the fair weight or preponderance of the whole evidence, the making of one *or* the other of said agreements." The jury were further instructed to the effect that the plaintiff did not ask to recover for the breach of both of said agreements; that in the nature of things the two agreements could not exist together; that they were to determine "whether either, and, if either, then which, of the said alleged agreements was actually made and afterwards broken;" that, if they found for the plaintiff on the first cause of action, no inquiry would be proper as to the second; that, if they found for the defendant on the first cause of action, then they should inquire "whether the

second alleged contract was made and broken, and, if so, ascertain what damage the plaintiff had sustained by reason thereof." Proper exceptions were taken.

A general verdict was rendered in favor of the plaintiff, which the defendant moved to set aside and for a new trial. From that verdict it is impossible to tell whether the jury found in favor of the plaintiff upon the first cause of action, or the second, or both. The damages assessed by the jury are greater than alleged for the breach of either contract. The jury did not find which of the alleged agreements was actually made and afterwards broken, as directed. If the jury awarded the damages assessed upon one cause of action only, then the issue upon the other cause of action was never determined, unless such finding for the plaintiff upon the one cause of action was, by necessary implication, a finding for the defendant upon the other cause of action. If in that way both of the issues are to be regarded as having been determined, then a part of the jury may have found in favor of the plaintiff on the first cause of action and against her on the second, while the other part of the jury may have found in favor of the plaintiff on the second cause of action and against her on the first; or the jury may have found in favor of the plaintiff upon one cause of action and disagreed as to the other, as was the fact in a similar verdict in *Hadley v. Heywood*, 121 Mass. 236. The amount of damages awarded would seem to indicate that the jury found in favor of the plaintiff on both causes of action. The general rule in such cases undoubtedly is to the effect that such general verdict in favor of the plaintiff determined all the issues made by the pleadings in her favor. *Fitzer v. McCannan*, 14 Wis. 63; *Krause v. Cutting*, 28 Wis. 655; *S. C.* 32 Wis. 687; 2 Thomp. Trials, § 2640. Upon this last hypothesis it is obvious that the damages, or a part of them, awarded upon the one issue are repugnant to a corresponding amount awarded upon the

other issue, and hence judgment could not properly be entered upon the verdict.

In any view of the case, the acceptance of a general verdict was irregular, and therefore it should have been set aside and a new trial granted. *Dewey v. Fifield*, 2 Wis. 73; *Lacher v. Will*, 6 Wis. 282; *Mitchell v. Printup*, 27 Ga. 469; *Bricker v. M. P. R. Co.* 83 Mo. 391. Obviously there should have been a special verdict, or else the plaintiff should have been required to elect which cause of action she would go to trial on. We have purposely refrained from expressing any opinion as to the sufficiency of the evidence or the rulings of the court upon either cause of action, since there must be a new trial and upon such trial the evidence and rulings may be different. What has been said about the evidence was merely for the purpose of indicating more clearly the defect in the verdict.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.