JOHN FORTUNE ET AL.

V.

OWEN T. JONES.

*Master and Servant—Assault and Battery—Defense of Servant—Instructions—Cross-examination—Special Findings—Pleading.*

1. The right of a master to defend his servant does not extend to a case where the servant is the aggressor, nor to a case of mutual assault.

2. In the case presented, an instruction given for the plaintiff was defective in ignoring the question as to whether the servant was first assaulted and in assuming that an employe, without regard to the terms of his employment, is in law a servant.

3. An instruction assuming the existence of material facts which are in dispute, is improper.

Fortune v. Jones.

4. In an action of trespass for assault and battery when the defendants have pleaded *non assault demense*, and the plaintiff has replied *de injuria*, without a special replication justifying such prior assault, he can not, either by evidence or instruction, justify it.

5. Where a witness has denied that, at a former trial, he testified to a conversation of a particular character, not denying the fact of a conversation, it is improper, on cross-examination, to require the defendant to testify that the witness had had a conversation.

6. The only request for special findings that are material under the statute are such as, if answered as desired by the party offering them, will make a verdict for the other party inconsistent.

[Opinion filed January 16, 1889.]

APPEAL from the Circuit Court of Cook County; the Hon. ARBA N. WATERMAN, Judge, presiding.

Messrs. HAYNES & DUNNE, for appellants.

Messrs. H. T. HELM & LYNN HELM, for appellee.

GARY, J. This is an action of trespass for an assault and battery. The testimony is very voluminous and contradictory. It is quite impossible to go over the whole case and discuss all the errors assigned within any reasonable compass. Fortune had a brewery and Jones a blacksmith-shop, quite near each other on the same side of the same street. There were two conflicts which were the subjects of investigation on the trial; the first in the blacksmith-shop in the afternoon and the other later on the same day on the sidewalk and street in front of the space between the shop and brewery. The appellee makes his principal claim for injuries that he alleges were inflicted upon him in the second affray. The appellant O'Grady worked for Fortune and a witness named Trainor for Jones. In the shop, in the afternoon, O'Grady had knocked Trainor down. There is a substantial agreement between the principal witnesses to the origin of the second affray, as to how it begun.

O'Grady was on the sidewalk, when Trainor, being there also, said to Brady, another witness, speaking of O'Grady, " There is a son of a bitch."

Trainor says: "I knew there was going to be a fight when I said that to him;" but he also says that he did not throw up his own hands for a fight; did not have time; O'Grady got in the first blow. Brady says he saw they were going to fight and put up his hands between them. McKean says that they both got their hands up as though they were going to fight, and Brady came to step in between them. O'Grady says: "So he put up his hands and I put up mine; Brady jumped between us."

One of the matters in dispute was what part, if any, the appellee took in the affray, and how he got into it. Some saying that he came up and struck O'Grady, and others that he did not. The fourth instruction given on behalf of the appellee is as follows:

"The jury are instructed that if they should find, from the evidence, that the defendants, or some of them, were in the act of assaulting Trainor, he being at the time an employe of the plaintiff, and that the plaintiff seeing such assault being committed by the defendants, or some one of them, upon the person of said Trainor, went to the rescue of and assistance of said Trainor—that in so doing the plaintiff had the lawful right to use such force as was necessary for the purpose of preventing the assault upon his said employe, Trainor; and if you believe, from the evidence, that the plaintiff, while trying to rescue said Trainor, and using no more force than was reasonably necessary for such purpose, was by the defendants, or either of them, thrown to the ground or kicked, then such act of the defendants, or defendant, as the case may be, was an assault, and was not justified by such action of the plaintiff in so defending his said employe, even though the said plaintiff had first struck one of the defendants, if such striking of the defendant by the plaintiff was while rescuing the said Trainor from an assault by the defendants, or either of them, if the plaintiff used no more force than was necessary for such purpose."

However doubtful may be the application of the principles of the old law relating to master and servant, in a state of society where no one accepts the name of a servant, except in legal proceedings or a public office, even under them the

Fortune v. Jones.

right of a master to come to the defense of his servant does not extend to a case where the servant is the aggressor, or to a case of mutual assault.

If a master is sued and defends on the ground of defense of his servant, he must allege that the plaintiff first assaulted his servant.    2 Ch. Pl. 697.

The testimony of Trainor shows that he intended a case of mutual assault.    " I knew there was going to be a fight," which takes two to make; and though he excuses his taking second place for want of time, other witnesses give him greater credit for promptness.

Though Trainor was a horse-shoer and had worked for appellee for a month before the affray, the terms upon which he worked do not appear—whether by piece-work or by the day; whether his term was ended or not.    This instruction was, therefore, wrong in principle, in conferring upon appellee the right of defense of Trainor—whether he was first assaulted or not, and in assuming that the employe, without regard to the terms of his employment, is in law a servant. The words are not synonymous.

There is another fault, both in this and the sixth instruction, which may not be grave enough to work a reversal of the judgment, but which ought to be avoided.    This says " being at the time an employe of the plaintiff."    In the sixth is the phrase, " thereby putting his life in danger."    In the connection in which the phrases were used they came dangerously near assuming facts to exist, material, and only to be found from the evidence by the jury.

Several other parts of different instructions might be criticised, some for apparent assumptions of facts, and others for leaving matters of law to the jury, but it is enough to suggest that on another trial care should be taken in these respects.

The irregularity in cross-examining Fortune as to Deveraux' testimony on a former trial, was a hardship on him, and well calculated to mislead the jury.    Deveraux had, upon this trial, denied that upon a former trial he had testified that he had been at the house of the appellee, and had, with him and his wife, a conversation of a particular character.    He denied

only the character, not the fact of the conversation. On the cross-examination of Fortune, over the objections of his counsel, he was compelled to state that Deveraux did testify on that former trial that he had been at the house of appellee and had a conversation with him and his wife.

This was not only a violation of the rule established in this State, that the cross-examination can not be extended to subjects not within the examination-in-chief (Bell v. Prewitt, 62 Ill. 361), but tended also to lead the jury mistakenly to believe that Fortune had discredited his own witness, than which scarcely any step in a trial can be more disastrous to the party taking it.

There was no error in the action of the court upon the questions offered for the jury to answer. The only questions material under the statute are such as, if answered as the party offering them desires, will make a verdict for the other party inconsistent. C. & N. W. Ry. v. Dunleavy, this term. The judgment is reversed and the case remanded.

*Reversed and remanded.*

---

## On Petition for Rehearing.

[Opinion filed February 13, 1889.]

GARY, J. On a petition for rehearing, the appellee seeks to construe the instruction quoted in the opinion heretofore filed as only declaring the law that a bystander may lawfully interfere in any affray for the preservation of the peace.

It is perfectly apparent that the drawer of the instruction had no such thought in his mind. If the instruction is with reference to that aspect reduced to its elements, it is, that if some of the appellants were assailing Trainor (no matter how the affray begun), and the appellee seeing that, went to the rescue and assistance of Trainor, then he had the right to use such force as was necessary to prevent the assault upon Trainor (even if the assault upon him was in repelling his own prior assault), and if, while he was trying to rescue Trainor, using no more force than was necessary, the appellants

assaulted the appellee, they were not justified, even if he struck first, if that striking was while rescuing Trainor, with no more force than was necessary.

There is no law for such a proposition. Not a word is in the instruction about the purpose of the appellee to preserve the peace, or attempting to quell the affray to which he was an impartial spectator. This court neither expresses or intimates any opinion as to the facts, but this instruction is not inconsistent with a hypothesis that the appellants might argue that the appellee takes sides with Trainor, right or wrong, goes to his rescue and assistance even if he was the aggressor, and if his efforts were directed toward the preservation of the peace, it was the peace of Warsaw.

There is a technical ground, upon which a correctly drawn instruction upon the theory of defending a servant or preserving the peace, had no place in this case. The appellants had jointly and separately pleaded *son assault demesne.*

To those pleas appellee had replied *de injuria.* Under that replication he had the right to insist that excessive force was used by the appellants in repelling his own prior assault, but without a special replication justifying such prior assault, he had no right, either by evidence or instruction, to justify it. Ayers v. Kelley, 11 Ill. 17; 1 Ch. Pl. 619; 1 Smith L. C. 216.

Perhaps, however, a correct instruction upon either theory would not have been cause for reversal for being outside of the issue, as each side put in all the evidence they had as to the whole transaction, and so the instruction, though erroneous, would have done no harm as to the real merits.

*Rehearing denied.*