THE CHICAGO CITY RAILWAY COMPANY

*v.*

MARY A. OLIS, Admx.

*Opinion filed October 24, 1901.*

1. WITNESSES—*correctness of instruction concerning false swearing.* An instruction authorizing the jury to reject uncorroborated testimony of a witness who has "willfully and knowingly" sworn falsely to any material point, is not improperly modified by adding the words "intentionally" and "corruptly" before the word "willfully."

2. SPECIAL INTERROGATORIES—*only ultimate facts are subjects for special findings.* A question of fact which is entitled to be submitted to the jury for their special finding must be one which is controlling, and not one which merely tends, more or less, to establish the ultimate facts in issue.

*Chicago City Railway Co.* v. *Olis,* 94 Ill. App. 323, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN C. GARVER, Judge, presiding.

WILLIAM J. HYNES, and WATSON J. FERRY, (MASON B. STARRING, of counsel,) for appellant.

MATZ, FISHER & BOYDEN, for appellee.

Mr. CHIEF JUSTICE WILKIN delivered the opinion of the court:

This suit originated in the circuit court of Cook county. On appeal to the Appellate Court for the First District by the defendant, the case being assigned to the branch of that court, the judgment below was affirmed. In the decision of the case the following opinion, by SHEPARD, P. J., was filed:

"The appellee brought suit, as administratrix of the estate of her deceased husband, John E. Olis, to recover damages for the death of said intestate because of the alleged negligent acts of the appellant in the operation of one of its cable trains on State street, at or near Fifty-eighth street, in Chicago. She recovered a judgment for $5000, and this appeal has followed.

"Out of the twenty-nine assigned errors appellant's counsel have argued but four. We will ignore the others, as they have done. Two of the errors considered by appellant relate to the instructions, one to the refusal by the court to submit to the jury a special interrogatory that was asked, and the other attacks the sufficiency of the evidence to support the verdict. The complaints that are made and urged with reference to the instructions will be first discussed.

"It is urged that the court erred in modifying the following instruction:

" 'If the jury believe, from the evidence, that any witness has willfully and knowingly sworn falsely to any material point in the case, they have the right to reject the entire testimony of such witness or witnesses in matters where their testimony is not corroborated by other

evidence which they believe to be credible, or facts and circumstances appearing in evidence.'

"The modification complained of consists in the insertion of the words 'intentionally, corruptly,' between the words 'has' and 'willfully,' so that, as given, the instruction reads that if 'any witness has intentionally, corruptly, willfully and knowingly sworn falsely,' etc. It is substantially conceded that 'intentionally' is synonymous with 'willfully,' and such reiteration ought not to make the instruction vicious. But as to the word 'corruptly' it is insisted that its use was equivalent to saying to the jury that although they should believe, from the evidence, that any witness had intentionally, willfully and knowingly sworn falsely to any material point in the case, yet they had no right to reject his testimony, when not corroborated, unless they should also believe, from the evidence, that such witness had been bribed or was to receive some sort of gain or reward. We are unable to agree with counsel in such respect. In such connection, 'corruptly' refers to the motive of the witness rather than to the means by which his testimony is obtained. So in *Overtoom* v. *Chicago and Eastern Illinois Railroad Co.* 181 Ill. 323, it is said: 'It is the corrupt motive, or the giving of false testimony knowing it to be false, that authorizes a jury to disregard the testimony of a witness.' Again, in 1 Bouvier's Law Dictionary it is said: 'An act may be corruptly done though the advantage to be derived from it be not offered by another.' And that learned author defines 'corruption' as being something against law, and illustrates its application by the case of a contract for usurious interest, wherein it was 'corruptly agreed,' etc. It would seem that a witness who should testify 'willfully and for the purpose of concealing the truth' would bring himself within the meaning of 'corruptly' testifying. (*Crabtree* v. *Hagenbaugh*, 25 Ill. 233.) In *Yundt* v. *Hartrunft*, 41 Ill. 9, it is said: 'It is true, that

when a witness has knowingly and corruptly testified falsely to a material fact, the jury are authorized to disregard all of his evidence unless it is sustained by corroborating evidence;' and the court holds that an instruction given in that case should have been so modified as to have announced that rule.    So, also, in *Hirschman* v. *People*, 101 Ill. 568, and *Rider* v. *People*, 110 id. 11, instructions using the language 'willfully and corruptly testified falsely,' etc., were approved.    We think there was no error in the instruction in the respect complained of.    But if, by any principle of reasoning, the modification might be criticised, we do not see why appellant did not get all he was entitled to by the giving of another of his instructions covering substantially the same question, as follows:

" 'The jury are instructed that it is a principle of law that if you believe, from the evidence, that any witness has willfully and knowingly sworn falsely to any material element in the case, or that any witness has willfully and knowingly exaggerated any material fact or circumstance for the purpose of deceiving, misleading or imposing upon the jury, then the jury have a right to reject the entire testimony of such witness unless corroborated by other evidence which you believe, or by facts and circumstances appearing in the case.'

"It is next urged that the court erred in refusing to give the following instruction:

" 'The jury are instructed that in considering the evidence of the witnesses in this case and determining what weight shall be attached to the same, they have the right to take into consideration whatever interest, if any, appears from the evidence such witness or witnesses may have in the result of the suit.'

"There was no evidence, and no claim seems to have been made, here or elsewhere, that any witness in the case, besides the plaintiff, (appellee,) had any interest

in the result of the litigation.    Therefore, when the appellant asked and was allowed another instruction to the jury, as follows, it obtained all it was entitled to:

"'The jury are instructed that while the law permits a plaintiff in a case to testify in her own behalf, nevertheless the jury have a right, in weighing her evidence and determining how much credence is to be given to it, to take into consideration that she is the plaintiff and her interest in the result of the suit.'

"See *Chicago City Railway Co.* v. *Mager,* 185 Ill. 336.

"The special interrogatory that the court refused to give, and which is made the subject of complaint, was as follows: 'First—Was the gripman on the train in question ringing his gong as he approached near to the so-called Fifty-eighth street on the occasion in question?' An answer to this question in the way that appellant desired when he propounded it (*Fortune* v. *Jones,* 30 Ill. App. 116,) would not have established appellant's lack of negligence or any other ultimate fact in the case.    It would have been to find but a single evidentiary fact that would not have been inconsistent with the general verdict that was given for the appellee.    A question of fact which is entitled to be submitted to the jury for their special finding must be one which, if found, must be controlling.    'A fact which merely tends to prove a fact in issue without actually proving it, cannot be said to be, in any legal sense, inconsistent with a general verdict, whatever that fact may be.'    (*Chicago and Northwestern Railway Co.* v. *Dunleavy,* 129 Ill. 132.)    'The rule is, that the special interrogatories to be submitted to a jury, under the statute, must relate to the ultimate facts, and not to mere evidentiary facts that tend, more or less, to establish the ultimate facts upon which the rights of the parties depend.'    (*Lake Erie and Western Railroad Co.* v. *Morain,* 140 Ill. 117.    See, also, *Terre Haute and Indianapolis Railroad Co.* v. *Eggmann,* 159 Ill. 550; *Chicago and Alton Railroad Co.* v. *Winters,* 175 id. 293.)    It was not error to

refuse to submit the interrogatory to the jury.  But as if to relieve the jury from the question as to whether the bell or gong were properly rung, the court, on its own motion, instructed them as follows:

" 'The evidence shows in this case that the car in question was properly constructed and in good order, and that there is no proof in the case of any failure of the gripman to ring the bell in a reasonable manner.'

"The remaining question argued, that the verdict was not supported by the evidence, relates wholly to questions that, under this record, were within the province of the jury to settle.  The car that ran into and killed appellee's intestate was running north on the east track of appellant's double-track road on State street.  The deceased was driving his team eastward across the tracks. He was driving a double team attached to a long-geared dirt wagon, and when struck by the on-coming train, moving at a rapid rate of speed, had so nearly succeeded in crossing,that the hind wheel, only, was collided with. At the time the deceased turned his team to cross the tracks he was in full view of the gripman, and so was the gripman in full view of him, assuming that they both exercised their visual faculties; and they were at such a distance apart as that either one could easily have avoided the accident by paying reasonable attention to the reciprocal obligations that each owed to the other on a public street.  Neither one, however, was required to exercise more than a reasonable regard for the rights of the other, and what that reasonable regard was, was a question for the jury, under the facts and circumstances of the case.  All that was required by either, under the circumstances, was to exercise his right so as not to unduly interfere with the right of the other. (*North Chicago Street Railroad Co.* v. *Zeiger*, 182 Ill. 9.)  Was that done? The evidence was very conflicting, and it is difficult to say with certainty where the right and justice of the case lie, although we agree with the jury that the preponder-

ance of the evidence is that the gripman was negligent in his conduct. We are in greater doubt of the deceased being in proper care for his own safety. As to that, however, the jury answered 'No,' to a special interrogatory propounded to them, as follows: 'Could the deceased, by the exercise of reasonable care, have avoided the collision and accident in question?' and we cannot say the answer is not fairly in accordance with the weight of the eivdence. 'If one reasonably appears to have time to do so, although he may observe the train approaching, he may attempt to cross a railroad track without waiting.' (*Baltimore and Ohio Southwestern Railway Co.* v. *Keck,* 185 Ill. 400.) And that was held in the case of a steam railway.

"It would be useless to attempt, by a review of the evidence in detail, to deny the correctness of the verdict. It was a clear case for the jury to decide, and they having done so, and the judge presiding at the trial, with the witnesses before him, having sanctioned the verdict, we affirm the judgment."

The points relied upon to reverse the judgment of the Appellate Court are the same as those urged here. The modified instruction might well have been given as asked, but we do not think the added words, "intentionally, corruptly," could have misled the jury to the prejudice of the defendant. An earnest effort is made here, by a lengthy discussion of the evidence, to show that the trial court erred in refusing to withdraw the case from the jury at the close of all the testimony, and we regard that as the only substantial question in the case. We think, however, the foregoing opinion fairly and logically disposes of that and the other questions raised upon the record. It will accordingly be adopted as our opinion, and its judgment affirmed.          *Judgment affirmed.*