## Springfield Coal Mining Company v. Elizabeth Gedutis.

1. WILFUL VIOLATION—*what does not excuse mine owner of.* A mine owner is not excused from a wilful violation of the Miners' Act in failing to provide the safeguards and protection required by it, by reason of the fact that his mine manager, who held a certificate of competency from the state board, has passed upon and determined favorably with respect to the conditions which resulted in the accident in question.

2. WILFUL VIOLATION—*defined.* The word "wilful," as used in the Miners' Act, is not alone used in the sense that it implies a wrongful intent, but it is employed, likewise, as including a conscious failure to perform or meet a duty imposed by statute.

3. SPECIAL INTERROGATORY—*when properly refused.* A special interrogatory which relates to an evidentiary as distinguished from an ultimate fact, is properly refused by the court.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Sangamon County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1905. Affirmed. Opinion filed June 8, 1906.

CONKLING & IRWIN and J. C. McBRIDE, for appellant.

SHUTT, GRAHAM & GRAHAM, for appellee.

MR. PRESIDING JUSTICE RAMSAY delivered the opinion of the court.

Charles Gedutis was killed by falling rock in a coal mine of appellant on the sixteenth day of August, 1904. He left a widow, the appellee, and three children surviving him. Appellee brought suit in the Circuit Court of Sangamon County against appellant for damages, alleging negligence of appellant to have been the cause of the death. She recovered a verdict and judgment in the sum of $1,995, from which the coal company has prosecuted this appeal.

The law under which the liability of the appellant is claimed is section 16 of chapter 93 of the Revised Statutes, governing mines and mining, which provides that "The mine manager shall instruct employees as to their respective duties, and shall visit and examine the various working places in the mine, as often as practicable. He shall al-

ways provide a sufficient supply of props, caps and timber on the miners' cars at the usual place when demanded, as nearly as possible in suitable lengths and dimensions for the securing of the roof by the miners, and it shall be the duty of the miner to properly prop and secure his place with materials provided therefor."

It was claimed by appellee, upon the trial, that the roof of the room in which deceased was working was in a very dangerous and unsafe condition; that this fact was known to the mine examiner for fully four days before the accident; that after the dangerous condition of the roof became known deceased demanded of appellant timbers, cross-bars and lagging with which to support the roof, which appellant failed to furnish, and that by reason of such neglect upon the part of appellant, the roof was allowed to remain unsafe; and by reason thereof the rock fell upon and killed Gedutis.

The coal company contended upon the trial that it furnished props and caps to Gedutis sufficient to make such roof safe; that the mine manager examined the roof in question and determined that props and caps, and not cross-bars and lagging, should be employed and that since such mine manager was duly licensed by the state board to manage the mine, his judgment in the matter, and not that of the miner, would control and therefore the company would not be liable.

The vital question in this case is treated by appellant as being this: since the mine manager held a certificate of competency from the state board and he determined that props and caps were the proper timbers to be used in making such roof safe, could appellant be held liable for a *wilful* violation of the statute in not furnishing cross-bars upon the request of the miner?

We are fully satisfied that a careful reading of said section 16 contemplates that the miner, himself, should have the right to demand from the coal company such timbers as he shall think necessary to make his room a safe place in which to work, and that he is not bound by the judgment

of the mine manager upon that subject. The statute says *he*, the mine manager, shall always provide a sufficient supply of timbers, etc., delivered on the miners' cars *when demanded*. This language clearly means that he is to furnish such material upon the demand of some one else, and that some one else must, of necessity, be the miner, for the same section provides that the material furnished shall be in suitable lengths and dimensions for the securing of the roof *by the miner*.

Since the miner must make the roof safe with the material furnished by the mine manager it must follow that the demand contemplated by the statute must be made by the miner who is specially charged to make the roof secure, and that the demand may be for such timbers as in his judgment shall be required to accomplish that purpose. We think this construction of the statute is the correct one, and that it is fully sustained by the authorities. Western Anthracite Coal Co. v. Beaver, 192 Ill. 333–338; Kellyville Coal Co. v. Strine, 217 Ill. 516–534.

It must follow then that if the miner make a demand upon the manager for material, which is not furnished him in compliance with such demand and an injury result from such failure upon the part of the company to furnish such material, then the company would be liable under the statute for *wilful* negligence.

The word *wilful* in this connection is not used in the sense that implies a wrongful intent, but a conscious failure to perform or meet a duty put upon the company by the statute governing the parties in this respect would be a wilful violation of that law, and the neglect of that duty would be wilful negligence. Kellyville Coal Co. v. Strine, 217 Ill. 516–528; Marquette Coal Co. v. Dielie, 208 Ill. 116–122; Odin Coal Co. v. Denman, 185 Ill. 413.

The doctrine above announced is in no way disputed or controverted by the case of Kellyville Coal Co. v. Hill, 87 Ill. App. 424, cited by appellant, for in that case the examiner made a mere mistake, or failed to *detect* a faulty roof, although he made an examination and sounded the

roof·for that purpose.    There was, therefore, in that case
no conscious failure to perform or meet the duty imposed
by the statute.

We think the evidence fairly tends to show that deceased
demanded cross-bars for use in his room and that appel·
·lant, with notice of the dangerous condition of the roof
and after demand by Gedutis for such timbers, failed to
comply with the demand and that the jury were therefore
warranted in finding appellant guilty of the wilful negli-
gence charged in the declaration.

What material, if any, was in the room where deceased
was working when he was killed and the uses to which it
could have been put, if any, were all questions of fact for
the jurors to consider and determine, and we are not dis-
posed to think that any error was committed by them in
determining the value of such evidence.

Appellant assigns as error the action of the court in
overruling its objection to a question stated by appellee to
a witness in the words as follows: "Now, at the time you
went in there just after the death of Gedutis, what cross-
bars, if any, were there in the room?" and contends that
putting the question in that form tended to show that in the
judgment of the witness a failure to furnish such cross-bars
was a wilful violation of the statute.    No such ground of ob-
jection was stated by appellant at the time the cause was
tried.    The only objection made was a general one and with-
out a specific statement by appellant as to the nature of the
objection.    There was no reversible error in the ruling of
the court.    If specific objection had been made at the time,
the form of the question could have been changed to meet
the conditions.

Appellant submitted to the court a special interrogatory
to be answered by the jury with their verdict, to wit:
"Were there any props and cap-pieces not in use in the
room of Gedutis at the time of the injury that were of suf-
ficient length and dimensions that they could have been
used in propping the roof?" which the court refused to sub-
mit to the jury.    In this there was no error as the ques-

tion related to an evidentiary fact, and not to an ultimate fact, which would control a general verdict. C. & A. R. R. Co. v. Harrington, 192 Ill. 9–32; Chicago City Ry. Co. v. Olis, 192 Ill. 514–518. The interrogatory had no relation to material which deceased had demanded, nor had it any reference to the quantity or sufficiency of the material except in the matter of length and dimension, nor any reference to the suitability of such materials for the uses to which it could have been put.

There was no error in refusing appellant's thirteenth, fourteenth and fifteenth instructions, as offered, as they stated in substance that a *mine manager* was authorized to direct the kind of material that should be used in such cases, and was in conflict with the holdings of the court upon that subject.

There is no reversible error in this record and the judgment is affirmed.

*Affirmed.*