WILKIE v. RALEIGH AND C. F. RAILROAD CO.

(November 20, 1900.)

1. *Negligence—Master and Servant—Injury—Railroad Track—Negligence per se.*

   Failure of railroad company to construct and maintain a safe road-bed is negligence *per se.*

2. *Negligence—Burden of Proof—Injury to Servant—Railroads—Master and Servant.*

   When a defendant railroad admits negligence. the presumption is that such negligence was cause of injury to employe.

3. *Negligence—Assumption of Risks—Master and Servant —Track—Section Master.*

   Section master of a railroad has the right to assume that the track is safe, while traveling over it on a hand-car.

4. *Negligence—Master and Servant—Injury to Servant— Damages—Proximate Cause.*

   When there is a defect in a railroad track, and it is shown to be the proximate cause of injury to employe; and employe and railroad company have equal knowledge of such defect, the employe can not recover.

5. *Damages—Evidence——Competency—Master and Servant—Personal Injuries.*

   An employe may prove any facts which tend to show his earning capacity, in an action for personal injuries.

6. *New Trial—Newly-Discovered Evidence—Laches.*

   New trial for newly-discovered evidence will not be granted, unless due diligence was used to secure the same.

7. *New. Trial—Cumulative Evidence—Newly-Discovered Evidence.*

New trial will not be granted for newly-discovered evidence which is merely cumulative.

8. *Instructions—Harmless Error—Judge.*

Where the Court in its charge to the jury generally used the formula, "if you find from the evidence," the use of the words, "if you believe," etc., in parts of the charge not material, was harmless error.

9. *Instructions—Special Instructions—Trial.*

The Court need not give special instructions where they are substantially included in the charge of the Court.

10. *Complaint—Sufficiency—Cause of Action.*

The complaint in this case states a cause of action.

CIVIL ACTION by C. D. Wilkie against the Raleigh and Cape Fear Railroad Company, heard by Judge *Frederick Moore* and a jury, at Spring Term, 1900, of CHATHAM Superior Court.

Following is the complaint:

The plaintiff, complaining, alleges:

1. That the defendant is a common carrier, owning and operating a railroad from a point near the city of Raleigh, N. C., to a point some twenty miles therefrom in a south-westerly direction, and was so engaged in operating its rail-road on the 13th day of April, 1899, having assumed the duties, burdens and obligations due to the public and to its employes as such common carrier.

2. That on the said April 13, 1899, the plaintiff was employed by the defendant in the capacity of one of two bosses of squads of workmen, whose duty it was to look after the defendant's road-bed and track, and keep the same in repair

under the immediate direction, superintendence and orders of one John A. Mills, plaintiff's superior officer. That in the performance of his duties the plaintiff was compelled to travel over the defendant's railroad under the direction and upon the orders of his said superior officer, in a certain car called a lever-car, so named because it was operated by lever, at each end of which there were handles, by the raising and lowering of which, by human hand-power, the lever was raised and lowered, the machinery set in motion, and the car propelled. That in the centre of the said car there was a stand for holding the shovels and other tools for the use of the workmen, which was secured by an iron brace. That there were no seats provided upon said car, and the correct position and only safe place provided for the plaintiff thereon was to stand near the middle and support himself by the said iron brace, which position was ordinarily and usually a safe position and one freed from danger. That the correct and proper position for the workmen thereon was at the respective ends of the said lever-car, and in such position that they could operate the said lever by the use of the said handles. That while occupying the position described, and traveling upon the defendant's railroad at the usual and ordinary speed, no injury or damage would ordinarily occur; but that on the said day, while so standing at his proper place on the said lever-car, and holding to the said brace securely, and passing over the defendant's railroad with due and proper care, at the usual and ordinary speed, and without fault of the plaintiff, the said lever-car, upon which the plaintiff was so riding, was thrown from the defendant's railroad track and stopped violently and suddenly, and the plaintiff violently thrown from his said proper position and place to the ground, to his serious, and as he is advised and charges, permanent injury; by reason of which said facts the plaintiff avers and charges

that the injuries and damages to the plaintiff were the direct and proximate result of the want of care and the negligence of the defendant.

3. That the defendant, in negligent disregard of its duties and obligations to the public and to its employes who were compelled to travel over its railroad in the regular performance of their duties to the defendant, permitted its road-bed and track to become in a dangerous and unsafe condition, so that the plaintiff, when so passing over the said railroad of the defendant in the proper performance of his duties, in the manner described in Article 2 hereof, on the said April 13, 1899, was, by reason of the said negligence and want of care of the defendant in permitting its said road-bed and track to become in a dangerous and unsafe condition, thrown from the said lever-car to the ground violently and suddenly, to his great, and as he is advised, permanent injury.

4. That the rails upon which the wheels of the defendant's cars are secured at their ends by clamps on either side, and fastened together with iron bolts. That it is essential to the security and safety of the traveling public, and to the defendant's employes who are compelled to travel over the defendant's railroad, that these bolts and clamps should be securely fastened and kept tight, and not permitted to work loose, as they are liable to do unless carefully examined and frequently tightened up. That should such clamps and bolts become loose from any cause, the track is at once made dangerous and unsafe, and the rails, instead of being safe and secure guides to the wheels of the defendant's cars, become unsafe and uncertain, and eventually there will become what is known as a "dodged joint," at which the ends of the two rails, instead of being directly opposite each other, are dodged to one side, and when the flanges of the car wheel strike such a "dodged joint" they are deflected from the rails

and the car is thrown from the track. That on the said April 13, 1899, while the plaintiff was occupying his proper position on his said lever-car, and was passing over the defendant's railroad, under the orders and directions of his said superior officer, and holding securely to the hereinbefore-described iron brace, and exercising due and proper care, with his lever-car running at a safe speed, the left front wheel of the said lever-car, as plaintiff believes, though it may have been another wheel, upon which the plaintiff was so carefully and properly riding, suddenly and without warning, struck a defective and dangerous place in the road-bed and track of the defendant, which had become so defective and dangerous by reason of the negligence and want of care of the defendant, at which said place there was a "dodged joint" in the defendant's track, caused by the negligence and want of care of the defendant in failing to keep its road-bed in proper condition, and in failing to keep the clamps and bolts which sustained and held the two ends of adjacent rails, as hereinbefore described, securely and properly fastened and tightened, all without fault of the plaintiff, and the said wheel so suddenly striking the said "dodged joint," was deflected from defendant's track, the car thrown from the track, and stopped violently and suddenly, and the plaintiff violently thrown therefrom and to the ground, to his great, and he is advised, permanent injury.

5. That as the result of the plaintiff's injuries he was confined to his bed for many weeks, incurred very great and heavy expenses for medical and other attentions, suffered, and still suffers, great and intense pain, and as he is advised and so charges, that he is permanently disabled and rendered physically unfit for and incapable of performing his work, and of supporting himself and his dependent family, to his great damage, $10,000.

Wherefore, the plaintiff demands judgment for the sum of $10,000, and the cost of this action, to be taxed by the Clerk. From judgment for plaintiff, the defendant appealed.

*Womack & Hayes,* for plaintiff.
*Douglass & Simms,* for defendant.

FURCHES, J.   This is an action for damages received by the alleged negligence of defendant company.   The plaintiff was an employe of the defendant at the time of the injury complained of, and, while he did not occupy the position of a "section master," his business was to do the work of a section master.   He and a man·by the name of Moring each had a squad of hands that worked under them, doing such work. But neither he nor Moring had any separate part or section of the defendant's road assigned to them, but they worked on any part of the road, under the directions of Mr. Mills, the President and Superintendent of the road; that the plaintiff had been sick and absent from the road, at his home in Chatham County, for two weeks just before he re- ceived this injury; that on his return to his work, Mr. Mills furnished him with a bill, or memorandum, of 11 points on the road that needed repairs.   The ninth of these was in the following language: "(9) Low joint south of second trestle below Willow Springs;" and it is contended by the defendant that this is the point at which the injury occurred.   But this was disputed by the plaintiff, and both sides introduced evi- dence as to this being the point where the injury was re- ceived.   The plaintiff and crew that worked under him were traveling over the road on a hand-car at the time of the in- jury, the plaintiff standing upon the car when it became de- railed, and, from the sudden jar, the plaintiff was thrown off and injured.   The theory of the plaintiff is that there was what is called a "dodged joint" in the road at this point; that defendant's duty was to keep its road-bed in good repair;

that it was its duty to know if it was not in good condition, and that in fact it did know that its road was not in good condition, and that it negligently allowed it to remain in bad condition, and that this negligence was the cause of the plaintiff's injury.    The defendant contended that the plaintiff's own negligence was the cause of his injury; that he was running this car at too great speed at the time of the injury, by reason of which the car was derailed; that the car was worked by means of a lever, and was jerked off the track by the violent manner in which the lever was worked; that the plaintiff had been cautioned by the defendant against running his car so fast over the road, but continued to do so, in violation of the orders of the defendant; that, had the plaintiff been running his car at a proper rate of speed, the accident would not have occurred; that in this way the plaintiff, by his own negligence, was the author of his injury, and was not injured by the negligence of the defendant.    The defendant also contended that the plaintiff was employed by defendant to do this work, and that he assumed the risk of danger and damage connected therewith, and that he can not recover on that account.

A great many points were raised and discussed during the trial below and here.    But the principal questions, as it seems to us, are those we have stated, and will be first discussed. Both sides offered a great amount of testimony to sustain their contention, but it is not necessary that we should repeat or discuss the same at this time, as it seems to us it was fairly submitted to the jury.    There is one exception to evidence which it will be necessary for us to notice before we conclude this opinion.

The defendant makes a great number of exceptions to the charge, all of which have been examined, but only a few of them will be discussed, as they can not be sustained, and their

127——14

discussion would be of no benefit. The plaintiff's right to recover depends upon the application of the principles of law to the contention of the parties as to the negligence of plaintiff and the negligence of defendant—as to whether the injury was caused by the negligent speed and manner in which the plaintiff operated his car, or whether it was caused by the negligence of defendant in not making and keeping its road and road-bed in good and safe condition. It was the duty of the defendant to construct and maintain a safe road-bed, and a failure to do so is negligence *per se*. *Marcom v. Railroad Co.*, 126 N. C., 200. It is admitted by the defendant that its road-bed was not in a good and safe condition at the point where this injury occurred, and that the defendant knew it was not. From this admitted negligence of the defendant, it will be presumed that defendant's negligence was the cause of plaintiff's injury. *Marcom v. Railroad Co.*, *supra*. And the burden is then cast upon the defendant to show that it was not its negligence, but that it was the negligence of the plaintiff, or that it was the concurrent negligence of the plaintiff, that caused the injury, or, as in Marcom's case, *supra*, it was caused by acts or influences over which the defendant had no control. The defendant in this case undertook to do this by showing that plaintiff was its employe, and in charge of the work of examining the road-bed and repairing the same; and, although it might have been the defect in the road-bed—the "dodged joint"—that caused it, that it was his fault and negligence that it was not repaired. But the evidence was that plaintiff had been absent for two weeks on account of sickness, and he testified that the road-bed was in good condition when he left, and that he had not had time or opportunity to inspect the road after his return, as he had been working under the special directions of Mills, the general superintendent; and he denies that this defect was one

of those mentioned in the list furnished him by the superintendent, or, if it was, it was not so described as to point it out to him as one of the points on the road that needed repair. These contentions were submitted to the jury, with proper instructions, as it seems to us.

The defendant also contended that the injury was caused by the concurring negligence of the plaintiff, in the manner and speed at which he ran and operated his car, and that the injury would not have occurred but for that, although the road-bed was defective. This contention, it seems to us, was also left to the jury, with proper instruction.

It is also contended by the defendant that, by the nature of plaintiff's employment, he assumed all risks incident thereto, and that he can not recover on that account. But we do not agree to this contention of the defendant. It is the duty (as we have stated) that defendant shall make and keep its road-bed in a good and safe condition. The defendant admits that its road-bed was not in a good and safe condition at this point, and it knew it was not. The plaintiff had the right to assume it was in good condition if he did not know of the defect, as the jury must have found under the charge of the Court. The Court upon this point charged the jury as follows: "If the jury shall find from the evidence that there was a defect in the defendant's track, in regard to a 'dodged joint,' or a low joint, and shall further find that such defect was the proximate cause of the plaintiff's injury, yet, if the jury shall further find that both plaintiff and defendant had equal knowledge of the existence of said defect, then plaintiff can not recover." "If the jury shall find from the evidence that the proximate cause of the plaintiff's injury was a 'dodged joint,' or a low joint, in defendant's track, and that plaintiff had knowledge of the existence of such defect, or, in the course of his employment, should have known of

the existence of the same, the plaintiff can not recover of defendant damages for such injury." This, we think, takes out of the case any grounds for the claim by the defendant that the plaintiff can not recover on account of his assumption of risk. The defendant asked for several special instructions, which were not given by the Court. But the only one to which it was entitled was given in the charge of the Court in almost the exact language of the prayer, it being that part of the charge of the Court that we have quoted above.

The plaintiff was allowed, over the objection of defendant, to testify, with the view of fixing the amount of his recovery, that he was receiving $40 per month, or $480 per year, from the defendant company, and that he was making, in addition to this, a profit by selling rations to the railroad hands sufficient to make his earnings $600 per annum. It may be that this was not a very proper way of increasing his earnings, as was argued by the defendant's counsel. But we do not see enough of these transactions to judge of this matter. It may have been that he furnished these rations at a reasonable profit, and that it was an accommodation to the hands for him to do so. And it may be that he received this employment at $40 per month with this privilege, when he would have charged the defendant $50 per month without it. And as we can not see that there was anything wrong in these transactions, and the evidence was for the purpose of showing his earning capacity, we think it was competent.

The defendant also demurred *ore tenus* to the plaintiff's complaint, and contended that it did not state a cause of action. But we can not sustain his demurrer.

The defendant, during the progress of the trial below, moved, under chapter 109 of the Acts of 1897, eight times, to dismiss the plaintiff's action, and each time its motion was

refused, and it excepted; and the defendant in its argument here insists that it was right in all of the eight motions. But we find it to be our duty to sustain the ruling of the Judge below as to all eight of these motions. This, it seems to us, was to overwork the "Hinsdale Act."

The defendant also moved before us for a new trial for newly-discovered evidence. But it does not seem that the defendant used that diligence in trying to procure this new evidence that it should have done; these new witnesses all being known to defendant, living in the neighborhood, and employes of defendant. *Shehan v. Malone,* 72 N. C., 59; *Simmons v. Mann,* 92 N. C., 12. Besides, it was only cumulative evidence, and a new trial will not be granted for such evidence. *Love v. Blewit,* 21 N. C., 108. This motion is refused.

The Judge in charging the jury generally uses the approved formula, "if they shall find from the evidence." But in three paragraphs of his charge he uses the words, "if you believe," and the defendant excepts to this, and cites *State v. Barrett,* 123 N. C., 753. When that opinion was written, it was supposed that such charges were made through carelessness and inattention, and we were in hopes that, upon the attention of the Judge being called to the matter, it would be corrected. The objection to this style of charging a jury is substantial. A juror should be governed in his findings by the evidence. Often jurors know something of the facts of a case, outside of the evidence, that causes them to believe that it is a certain way, and yet it would be highly improper for them to be governed in their verdict by such knowledge. They may believe it is that way, when they would not and could not so find from the evidence. The defendant would be entitled to a new trial for this error, if it had occurred in that part of the charge that was material to

the verdict in the case.   We are of the opinion that the law has been substantially and correctly administered by the court below, and we therefore affirm the judgment.

Affirmed.