TRINITY & B. V. RY. CO. v. GEARY.
(No. 344.)

(Court of Civil Appeals of Texas. El Paso. June 13, 1914. Rehearing Denied July 2, 1914.)

1. PLEADING (§ 53*) — PETITION — SEPARATE COUNTS.

The cause of action set up in two counts of a petition for injury to an employé from being thrown from a car by the sudden stopping of the train, the one averring a specific act of negligence in the uncoupling of the cars by an employé without turning the angle cocks and confining the air, whereby the brakes were suddenly applied and the car brought to a sudden and abrupt stop, the other containing a general allegation of negligence in the operation of handling and equipment of the train, is the same.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 114–117; Dec. Dig. § 53.*]

2. TRIAL (§ 330*) — VERDICT — SUFFICIENCY — DIFFERENT COUNTS FOR SAME CAUSE OF ACTION.

The counts setting up the same cause of action, but one alleging a specific act of negligence, and the other containing a general allegation of negligence, the verdict in a servant's action for injury, from sudden application of brakes, causing the car to suddenly stop, throw-

ing plaintiff. "We * * * find plaintiff * * * entitled to recover under his first and second counts," and assessing the damages, is, in effect, a general verdict that the sudden application of brakes was due to defendant's negligence, with a diversity of opinion as to the particular causative agency, and is sufficient; unanimity of opinion as to the particular act of negligence causing the sudden application being unnecessary.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 777–781½; Dec. Dig. § 330.*]

**3. TRIAL (§ 296*) — INSTRUCTIONS — SUBMISSION OF NEGLIGENCE AND CONTRIBUTORY NEGLIGENCE.**

A paragraph of a charge which is an affirmative presentation and submission of the issue of negligence in a respect charged in count 3 of the petition, and which tells the jury that if they believe there was want of ordinary care in certain respects, which was the proximate cause of plaintiff's injury, to find for him under said count 3, is not objectionable because making no mention of contributory negligence, properly submitted in another paragraph of the charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–713, 715, 716, 718; Dec. Dig. § 296.*]

**4. MASTER AND SERVANT (§ 278*)—INJURY TO SERVANT — NEGLIGENCE — RES IPSA LOQUITUR.**

The instant stop of a train, under the management of the company's servant, while going at a speed of several miles an hour not being an occurrence in the ordinary course of things, if those having its control use proper care in its operation and with respect to equipment, its occurrence, in the absence of any explanation, affords reasonable evidence, in a servant's action for injury therefrom, that such stop was due to want of ordinary care.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. § 278.*]

**5. MASTER AND SERVANT (§ 286*)—INJURY TO SERVANT—NEGLIGENCE.**

The affirmative evidence of a circumstantial nature, in an action for injury to an employé on a gravel train, from the instant stop of it, from sudden application of the air brake, through a breaking of the air hose, held sufficient, independent of the rule of res ipsa loquitur, for submission of the issue of negligence in improper operation or equipment of the train.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

**6. DAMAGES (§ 172*) — PERSONAL INJURY — EARNING CAPACITY—EVIDENCE.**

As bearing on the earning capacity and loss thereof of plaintiff in an action for personal injury evidence of his profits from the boarding of the section crew, a perquisite of his position of section foreman, is admissible, especially where he required no substantial capital therein.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 490–492, 501; Dec. Dig. § 172.*]

**7. MASTER AND SERVANT (§ 258*)—ACTION—PETITION—GENERAL ALLEGATION OF NEGLIGENCE.**

A general allegation of negligence in the petition in a servant's action for injury is permissible, where the doctrine of res ipsa loquitur is applicable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 816–836.; Dec. Dig. § 258.*]

**8. APPEAL AND ERROR (§ 1099*)—LAW OF THE CASE—HOLDING ON PRIOR APPEAL.**

The holding on appeal that a general allegation of negligence in the petition is permissible is the law of the case on a subsequent appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4370–4379; Dec. Dig. § 1099.*]

**9. APPEAL AND ERROR (§ 1170*)—HARMLESS ERROR—PRESUMPTION.**

Courts of Civil Appeals rule 62a (149 S. W. x) having the effect of abolishing presumption of injury from error, any error in overruling·an exception to a general allegation of negligence, no injury therefrom being apparent, is not ground for reversal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4032, 4066, 4075, 4098, 4101, 4454, 4540–4545; Dec. Dig. § 1170.*]

**10. DAMAGES (§ 132*) — PERSONAL INJURY — EXCESSIVE VERDICT.** ·

In case of injury to a man 49 years old, strong, healthy, and industrious, previously earning $100 to $125 a month, held a verdict of $20,000 was not excessive, under the evidence as to his right arm being permanently paralyzed, existence of a condition requiring it to be always tightly bandaged, the need of assistance in taking care of himself, and nursing and medical attention for the rest of his life, and his health and nervous system being undermined.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. § 132.*]

Appeal from District Court, Harris County; R. E. Crawford, Special Judge.

Action by Morris Geary against the Trinity & Brazos Valley Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

See, also, 144 S. W. 1045.

N. H. Lassiter, of Ft. Worth, Andrews, Streetman, Burns & Logue, W. L. Cook, and Coke K. Burns, all of Houston, for appellant. John Lovejoy and Presley K. Ewing, both of Houston, for appellee.

HIGGINS, J. Appellee sued for damages resulting from personal injuries sustained November 23, 1909, while in the employment of defendant as a section foreman and engaged in hauling· and unloading gravel from a train on appellant's line of railroad. This is the second appeal; the former opinion appearing in 144 S. W. 1045.

The petition contains three counts, the second of which need not be noticed, as it was not submitted to the jury. The first and third counts are in precisely the same language, except as respects the allegation of negligence. In both counts it is averred that on November 23, 1909, plaintiff was in the employment of the defendant, serving it as a section foreman, and, so serving it, he was in the ordinary discharge of the duties of his service, riding on a gravel train, which was running between six and ten miles an hour, and which consisted of a long string of flat cars, just unloaded of gravel, with engine thereof facing north, but at the south end of

the train, and with the caboose at the north end; that while he was so engaged in riding, standing about the center of a flat car, or, at any rate, thereon, where he had a right to be (which car was the second car from the caboose at the north end of said train), the brakes were, unexpectedly to him, suddenly applied, and the car suddenly and abruptly stopped, as would be in an instantly applied emergency, whereby he was thrown northward about 15 feet to the end of the car, and caused to fall onto and against the car and from the car to the ground, whereby he sustained injuries which were specifically alleged, together with the items of his pecuniary damage. The allegation of negligence in the first count reads:

"That one of defendant's employés engaged in operating said train, being one of the operatives thereof, in the course of his service for defendant in that behalf, and acting within the scope of his employment for it, while said train was moving as aforesaid, uncoupled cars of said train without turning the angle cocks and confining the air, whereby said cars separated and thereby burst or parted the air line or hose, by means whereof the air was suddenly applied to the brakes, and the car on which plaintiff was riding suddenly and abruptly stopped as aforesaid; which act on the part of defendant's said employé in so handling said car was negligence towards plaintiff, and a proximate cause of the injuries suffered by him as aforesaid; that the defendant sometimes claims that the sudden application of the brakes and sudden and abrupt stop of the car, as aforesaid, were solely on account of the bursting of the air hose, but, if so, such resulted from the separation of the cars, due to defendant's negligence as aforesaid, or, if not, to a defect in the hose due to defendant's negligence in failing to use ordinary care in the way of inspection to maintain the same in a reasonably safe condition."

The allegation of negligence in the third count reads:

"That aforesaid train, so causing injury to plaintiff as aforesaid, including its operation, handling, and equipment, was under the exclusive management and control of the defendant or its employés other than plaintiff, and the accident to plaintiff, so occasioned as aforesaid, was such as in the ordinary course of things does not happen if those who have the management and control use proper or ordinary care, and plaintiff's said injuries so suffered on account of said brakes being suddenly applied so as to produce said sudden and abrupt stop of the car were proximately caused by negligence of the defendant or of its agents or employés acting for it within the scope of their employment in that behalf, due to a want of ordinary care either in the operation or handling or in the equipment of said train, whereby it was, on account of negligence of the defendant or imputable to it, either improperly operated or handled defectively or insufficiently equipped, but the particular or particulars of which negligence are unknown to plaintiff, and he cannot more definitely or with greater certainty specify such; that the defendant sometimes claims that the sudden application of the brakes and sudden and abrupt stop of the car, as aforesaid, were solely on account of the bursting of the air hose, but, if so, such resulted from the separation of the cars due to defendant's negligence as aforesaid, or if not, to a defect in the hose due to defendant's negligence in failing to use ordinary care in the way of inspection to maintain the same in a reasonably safe condition."

Defendant answered by general denial and plea of assumed risk and contributory negligence.

Upon the issues raised by the pleadings, the jury was instructed:

"IV. If you believe, from the evidence, that one of defendant's employés engaged in operating the train in question uncoupled the cars of the train without turning the angle cocks and confining the air, and that thereby the cars were caused to separate and to burst or part the air hose and to apply the air to the brakes, and that the effect of this was to stop the car on which plaintiff was riding suddenly and abruptly, and that by reason thereof plaintiff was thrown and caused to fall and suffer injuries substantially in the manner alleged, and if you further believe that such operative in so doing, if he did, was acting within the course of his service and scope of his employment for the defendant, and that such act on his part, if committed, was a want of ordinary care towards plaintiff, and that such want of ordinary care, if any, was a proximate cause, as before defined, of alleged injuries to plaintiff, then find for the plaintiff under the first count of his petition, and so say by your verdict.

"V. If you do not believe, from a preponderance of the evidence, that on the occasion in question the coupling pin was pulled without the angle cocks being turned, or if you do not believe that, though same was pulled, if it was, without the angle cocks being turned, such act was negligence toward the plaintiff, or if you do not believe that such act, if done, and if same was negligence, was an act from which a person of ordinary prudence under the existing circumstances ought reasonably to have anticipated injury to a person riding upon said car in the position you may find, plaintiff was at the time of the accident, then, in such event, your verdict should be for defendant as concerns the first count of plaintiff's petition.

"VI. If you do not find that an operative of the train uncoupled the cars without turning the angle cocks and confining the air, but do believe, from the evidence, that the cars separated and broke or parted the air hose, and that thereby the brakes were applied and the car on which plaintiff was riding suddenly and abruptly stopped, and that by reason thereof plaintiff was thrown and caused to fall and to suffer injuries substantially in the manner alleged, and if you further believe that such an accident does not in the ordinary course of things happen if those who have the management of the train, including its operation and equipment, use reasonable care, and if you further believe that such operation of the cars and application of the brakes and abrupt and sudden stopping of the car on which plaintiff was riding, if such happened, resulted in some manner either from improper operation or defective equipment of the train, and that such was due to a want of ordinary care on the part of the defendant or of any of its agents or employés acting for it within the scope of their employment, and that such want of ordinary care, if any, was a proximate cause, as before defined, of alleged injuries to plaintiff, if sustained, then find for plaintiff under the third count of his petition, and so say by your verdict.

"You will not separately consider the second count of the petition, since, so far as sustained by the court, it is the same as the third.

"VII. If you do not believe from a preponderance of the evidence that the cars separated and that the air hose was thereby bursted or parted, and that by such means the brakes were applied and the car on which plaintiff was riding suddenly and abruptly stopped, or if you do not believe that by reason thereof plaintiff was thrown and caused to fall and to suffer injuries substantially as alleged, or if you do not believe that such sudden and abrupt stop of

the car, if any, was due to a want of ordinary care on the part of the defendant or of any·of its agents or employés acting within the scope of their employment, or if you do not believe that injury to plaintiff, or any like injury, could, in the exercise of ordinary care, reasonably have been anticipated as a natural and probable consequence of such sudden and abrupt stop. if any, then find for the defendant, and so say by your verdict.

"VIII. If you find plaintiff entitled to recover under the first count, you need not consider his right to recover or not under the third count.

"If you do not find plaintiff entitled to recover under the first count, then, unless you believe, from a preponderance of the evidence, that some defect in the train existed, and that defendant or its agents or employés knew thereof, or, in the exercise of ordinary care, should have known thereof, within a reasonable time to have remedied it, and that such defect, if existing with the knowledge, or negligent lack of knowledge, on the part of the defendant, was a proximate cause of alleged injuries to plaintiff, then you cannot find for plaintiff under the third count under the claim of negligent equipment of the train, and in that event you will decide whether or not plaintiff is entitled to recover under said third count under the claim of negligent operation of the train, as before submitted to you.

"IX. An employé is held in law to assume the ordinary risks incident to his employment, but risks arising from the negligence of the defendant or imputable to it are not deemed in law to be ordinary risks incident to the employment.

"If, in view of the above explanation, you believe from the evidence that plaintiff sustained alleged injuries by reason of a sudden and abrupt stop of the car upon which he was riding, and that the danger, if any, from said sudden and abrupt stop, if such happened, was a risk ordinarily incident to the service in which plaintiff was engaged, or, in other words, was an ordinary risk incident to his employment, then find for the defendant.

"However, if you believe, from the evidence, that the sudden and abrupt stop of the car on the occasion in question, if such happened, arose from and was due to negligence, if any, on the part of the defendant, as submitted to you, then the danger, if any, of such sudden and abrupt stop was not assumed by plaintiff as an ordinary risk incident to his employment.

"X. Contributory negligence means such act or omission on the part of a plaintiff as an ordinarily prudent person would not do or suffer under the same or similar circumstances, which, concurring with a negligent act or omission of a defendant, becomes a proximate cause of an injury.

"If you believe from the evidence that plaintiff, after being specially warned not to stand too near the end of the car on which he was riding, if he was, or, independent of any such warning, failed to assume or take such position on the car, or to so conduct himself while thereon, as a person of ordinary care would have done under the same or similar circumstances to avoid such jerks, jars, or stops as were ordinarily incident to, or connected with, the operation and movement of the train, or as he knew of or must necessarily have known of, and that he thereby contributed to the injuries of which he complains, then you will diminish the damages, if you find plaintiff entitled to recover such, in proportion to the amount of negligence attributable to plaintiff.

"XI. If you do not believe, from the evidence, that plaintiff was guilty of contributory negligence, as submitted to you in the next preceding paragraph, but believe from the evidence that he was acting at the time with such care as an ordinarily prudent person in his situation would have exercised under the same or similar circumstances, then you will not, if you find plaintiff entitled to recover damages, reduce such damages anything on account of contributory negligence.

"XII. If your verdict is in favor of the plaintiff, then you will, in view of and subject to the foregoing instructions assess his damages at such sum as you believe, from the evidence, to be°fair and just compensation for the injuries alleged and proved to have been suffered by the plaintiff on 'the occasion in question, if any, taking into consideration, if shown by the evidence to the natural and probable result of such injuries, the following items, to wit:

"(1) Mental anguish and physical suffering to him therefrom, if any, including such as he will in reasonable probability suffer therefrom in the future, if any.

"(2) Also the reasonable value of time lost to him from such injuries down to the trial, if any.

"(3) Also the reasonable value of past necessary nursing and medical attention received by him on account of such injuries prior to the trial, if any, including only such medical treatment as he received from Dr. Lunn, if any.

"(4) Also the reasonable value, if paid now, of such necessary nursing and medical attention ·as he will be reasonably certain to require on account of such injuries in the future, if any.

"(5) Also such sum, if paid now, as will be fair and reasonable compensation to him for his diminished capacity, on account of such injuries, to labor and earn money beyond the trial in the future, if any.

"You will not consider any testimony concerning the necessity for massage treatment in the future; such is not alleged as an element of damage.

"The burden remains upon plaintiff to establish by a preponderance of the evidence, the measure and extent of his damages, if any, including the facts involved in that inquiry as submitted to you by the court.

"XIII. If your verdict is in favor of the plaintiff and you find him entitled to recover under the first count, the form of your verdict will be: 'We, the jury, find for plaintiff, under his first count, and assess his damages at $—— (stating the amount).'

"If your verdict is in favor of plaintiff, and you do not find him entitled to recover under the first count, and do find him entitled to recover under his third count, the form of your verdict will be: 'We, the jury, find, for plaintiff under his third count, and assess his damages at $—— (stating the amount).'

"If you find plaintiff entitled to recover, and some of you find him entitled to recover under his first count, and, some of you find him entitled to recover under his third count, the form of your verdict will be: 'We, the jury, find plaintiff entitled to recover under his first and third counts, and assess his damages at $—— (stating the amount).'

"If your verdict is in favor of the defendant, its form will be: 'We, the jury, find for the defendant.' "

[1] The cause of action set up in the two counts is the same, the specific act of negligence averred in the first count being the uncoupling of the cars by an employé of the company without turning the angle cocks and confining the air, whereby the brakes were suddenly applied and the car brought to a sudden and abrupt stop; whereas in the third count there is a general allegation of negligence in the operation, handling and equipment of the train, which is permissible where the doctrine of res ipsa loquitur is. applicable. Ordinarily it is proper and the better practice to combine in one count the various acts of negligence relied upon, but had plaintiff here in a single count alleged negligence gen-

erally, and then set out the specific act of uncoupling the cars without turning the angle cocks and confining the air, or vice versa, a rule of pleading would have limited his right of recovery to the specific act. Ry. Co. v. De Ham, 93 Tex. 74, 53 S. W. 375. And he would, in such event, have been deprived of the benefit of the res ipsa loquitur doctrine otherwise accorded him. Ry. Co. v. Brymer, 124 S. W. 1009. Clearly plaintiff was entitled to recover upon either phase of the evidence, as it might develop, and, in order to avail himself of this right and meet the rule of pleading indicated, it was necessary that he set up his cause of action in two separate counts.

That the cause of action was the same in both counts is susceptible of ready and easy demonstration. In the third count the sudden application of the brakes producing the sudden and abrupt stop of car is alleged to have resulted from negligence "either in the operation or handling or in the equipment" of the train. In the first count it is alleged to have resulted from negligence of an employé in uncoupling the "cars of said train without turning the angle cocks and confining the air." Each count contains the same alternative allegation of negligence with respect to equipment.

Now, would any one assert that the act of uncoupling the cars without turning the angle cocks and confining the air is not an act of "operation or handling" and embraced within the general allegation of the third count? The allegations relate to one and the same matter, one being specific and the other general. Thus it must be conceded the specific allegation in the first count is embraced within the general allegation contained in the third, and that they state one and the same cause of action. Distinct or inconsistent causes of action may not properly be set up in the same count. Townes on Pleading (2d Ed.) pp. 477, 478. If in one count plaintiff had made his general allegation of negligence and his allegation of the specific act in the very same language which he used in his separate counts, it would hardly be contended that it was improper for him to do so, or that distinct or inconsistent causes of action were set up; and the circumstance that two counts are employed to make both grounds available does not change the identity of the cause of action. In almost every personal injury case more than one act of negligence is alleged in a single count, but the various specifications of the negligence relied upon are not regarded as separate and distinct causes of action. They may be separate and distinct integral parts of a complete whole, but not, of themselves alone, a complete cause of action. So the allegation of the specific act of negligence in the first count of plaintiff's petition and the general one in the third are to be regarded as relating to one and the same cause of action, upon either of which a complete cause

of action may rest as a base, but necessary to be set up in two counts, in view of the rule of pleading noted, in order that plaintiff might avail himself of the right of recovery upon either phase of the evidence, as it might develop. That he is thus entitled to present his cause of action is quite clear. Townes on Pleading (2d Ed.) pp. 477, 478.

[2] These preliminary observations are made to the end that a proper understanding and disposition may be made of a question confronting us upon the threshold of this case, relative to the sufficiency and legality of the verdict rendered by the jury which reads:

"We, the jury, find plaintiff, Morris Geary, entitled to recover under his first and third counts, and assess his damages at $20,000.00 (twenty thousand dollars)."

The verdict is to be construed in connection with the instructions. Garrett v. Robinson, 93 Tex. 413, 55 S. W. 564. Applying this rule, it is apparent some of the jurors based their finding upon the specific act of negligence alleged in the first count, whereas other jurors rejected this theory, and, under the res ipsa loquitur rule, found that the sudden application of the brakes, producing the sudden and abrupt stop of the car, was due to some other act of negligence in the operation and handling of the train, or in respect to equipment.

In effect, it was a general verdict in plaintiff's favor that the sudden application of the brakes, causing the car to suddenly and abruptly stop, was due to defendant's negligence, but with a diversity of opinion as to the particular causative agency.

The basic idea upon which rests the various propositions subjoined to appellant's first four assignments questioning the legality of the verdict is that unanimity of opinion was necessary, not only of the essential ultimate fact of negligence in the sudden stop of the car, but of the particular negligent act causing it, as well. In our opinion, unanimity is necessary only of the essential ultimate fact of negligence whereby the car was brought to a sudden and abrupt stop. It is wholly immaterial that this collective unanimous finding may in part have rested upon the belief of certain jurors that the causative agency was the act of an employé in uncoupling the cars without turning the angle cocks and confining the air and the belief of others that it was some other negligent act in respect to operation or equipment. It would seem, if the jury unanimously determined the car came to a sudden and abrupt stop through the negligent act of the defendant, this being the basic fact upon which the action rests, this should be all that is necessary, and unanimity should not be essential as to the varying details and phases of the evidence offered to support the same. A simple illustration will perhaps illustrate the absurd consequence to which a contrary hold would logically and inevitably lead: A.

brings suit against a railway company upon a personal injury claim, his injury having been received in the derailment of a train upon which he was a passenger. It was alleged the derailment was due to the company's negligence: (a) In running at an excessive speed; (b) in a defective track and roadbed. Now, could it be contended that the rendition of a general verdict in plaintiff's favor in such a case would be improper? Certainly not. Yet, under such a verdict, the jurors might have been divided in their view as to the causative agency. Now, if unanimity of decision as to these details be essential, it of necessity follows that a general verdict would not be proper and special findings upon the same be required, to the end that defendant's rights be adequately protected and a judgment be not rendered against it upon a verdict lacking in essential unanimity. We apprehend it would not be contended that a general verdict for plaintiff in such a case is improper or that defendant has any right to additional findings. Since it would have no right to require findings upon such details, it follows they are immaterial issues and unanimity of opinion in respect thereto nonessential.

The instant case is a perfect parallel to the one supposed. The uncoupling of the cars without turning the angle cocks and confining the air, as shown, was improper operation or handling of the train and embraced within the general allegation of negligence in the third count. If the court below, as it might have done, under the third count, had given a general instruction to find in plaintiff's favor, if the jury found the sudden application of brakes and stop of car was proximately due to the negligence of defendant in operation or handling of train, who would suppose a verdict in plaintiff's favor, returned under such an instruction, could be invalidated by showing that, while concurring in the finding as to negligent operation, some of the jury had thought the negligent causative act was the failure to turn angle cocks and others had believed it was some other operative act?

Since unanimity of opinion, as respects the causative negligent agency producing the sudden and abrupt stop of the car, is regarded as nonessential, the verdict is then but a general one in plaintiff's favor, and, as such, possesses the requisite unanimity.

That a general verdict for plaintiff is proper upon a petition containing several counts, but embracing only one cause of action, see Ency. Pl. & Pr. 850–852, and note at 851.

Nothing could more perfectly demonstrate, on the question of unanimity, the nonessential character of the detail as to the particular causative agency of the sudden and abrupt stop of car than the rule, well established, in a negligence case, that if the counts state the same right of action, varying only as to the allegations of negligence,

so as to meet the possible varying phases of the evidence, a general verdict is proper. Lancaster v. Ins. Co., 92 Mo. 460, 5 S. W. 23, 1 Am. St. Rep. 739; Leu v. St. Louis Transit Co., 110 Mo. App. 458, 85 S. W. 137; Parker v. Ry. Co., 84 Vt. 329, 79 Atl. 865; Murray v. Ins. Co., 96 N. Y. 614, 48 Am. Rep. 658.

The Parker Case, supra, was a personal injury case by a passenger. In this case it was said:

"At the close of all the evidence the defendant moved for a separate verdict on each count, because the evidence failed to establish the allegations of each; because the evidence did not establish negligence on the part of the defendant in any of the respects complained of in any; and because on all the evidence the plaintiff was not entitled to recover. This motion was properly overruled. Such a practice does not obtain in this state, and ought not to obtain. It is to be noticed that the counts are not based upon separate and distinct causes of action, but upon the same cause of action, though varied in statement to meet the possible exigencies of the case that the evidence might present, and so the issue joined on each count is not a separate and distinct issue, but the same issue that is joined on the other counts. Therefore the practice asked for, if adopted, might result, and often would result, in a verdict each way on a single, indivisible issue and cause of action, whereas, there should be but one verdict, whichever way it is, as there is but one issue."

Murray v. Ins. Co., supra, was an action upon insurance policy defended upon the ground that deceased died in or in consequence of a violation of law. It appeared the jury agreed on the ultimate fact that the insured died because of a violation of law, but differed as to the minor facts inducing that conclusion; some reaching the conclusion from one minor fact or cause, some from another. It was held:

"The point to be determined by the jury was whether the insured died in, or in consequence of, a violation of law. The jury found for the defendant upon this issue, and as was said by Brown, J., in his very satisfactory opinion: 'The jury might well have united in that conclusion, although some should think the shooting accidental, and others intentional, some that it was done in self-defense, others that it was done in the heat of passion, some that the assured had abandoned the combat, others that he had turned to renew the assault upon Berdell with his pistol.' It is not necessary that a jury, in order to find a verdict, should concur in a single view of the transaction disclosed by the evidence. If the conclusion may be justified upon either of two interpretations of the evidence, the verdict cannot be impeached by showing that a part of the jury proceeded upon one interpretation and a part upon the other."

In case of verdict upon special issues, it is of course true that the defendant is entitled to have the jury pass upon every contested fact material to the legal conclusion in plaintiff's favor; that is, on all the ultimate facts upon which his right to recover depends in law. To refuse the submission of a material fact of that character must necessarily be error. The immateriality of a finding as to the particular causative agency of the sudden application of brakes and stop of car is shown by Ry. Co. v. Olis, 192 Ill. 514, 61 N. E. 459; Chicago, etc., v. Nelson,

197 Ill. 334, 64 N. E. 369; Morbey v. Ry. Co., 116 Iowa, 84, 89 N. W. 105; Peer v. Ryan, 54 Mich. 224, 19 N. W. 961; Ry. Co. v. Scheffner, 209 Ill. 9, 70 N. E. 619; Montayne v. Northern, etc., 127 Wis. 22, 105 N. W. 1043.

Railway Co. v. Olis, supra, was an action against a street railway for personal injuries, and a special interrogatory as to whether the defendant's motorman was ringing his gong on approaching the crossing was properly refused, as calling for a finding upon a 'mere evidentiary and noncontrolling question of fact.

In Chicago, etc., v. Nelson, supra, error was assigned to the refusal to submit this question:

"Was the defendant guilty of negligence causing the injury in this case, and, if so, in what did such negligence consist?"

Held:

"This special interrogatory was properly refused, for it was not restricted to those ultimate facts upon which the rights of the parties directly depended, but sought an opinion on probative facts."

In Morbey v. C. & N. W. Ry. Co., 116 Iowa, 84, 89 N. W. 105, the question, "If you find for the plaintiff, state upon what negligence you base such finding, and what employé or employés committed it," was properly refused, because it could have been answered without touching any issue in the case.

In Peer v. Ryan, 54 Mich. 224, 19 N. W. 961, it was held that several counts requiring a jury in an action of negligence to specify what defendant did or omitted were erroneous, because, if the jury was satisfied that he was wanting in care, plaintiff was entitled to their general verdict.

In Montayne v. Northern Electrical Mfg. Co., 127 Wis. 22, 105 N. W. 1043, in an action for injuries received in operating a machine, the refusal to submit questions covering different phases of the evidence concerning the nature of the defects, if the machine was found defective in construction, was proper, because they required the jury, in answering the general questions respecting the alleged negligence of defendant, to state the specific grounds of their findings.

Of the adversely cited cases, the only ones of any apparent pertinency are Biggs v. Barry, Fed. Cas. No. 1,402; Schofield v. Miltmore, 74 Wis. 194, 42 N. W. 214; Clark's Adm'x v. Ry. Co., 36 Mo. 202; Parrott v. Thacher, 26 Mass. [9 Pick.] 426. All of these are plainly referable to the rule of practice that a general verdict in plaintiff's favor should not be allowed upon a petition setting up two distinct or inconsistent grounds or causes of action. 22 Ency. Pl. & Pr. 849, 850, and cases cited. Lancaster v. Ins. Co., supra. The distinction is plain and manifest, for there must be unanimity as to any one complete cause of action before plaintiff is entitled to a verdict, and a general verdict in such a case might be rendered with this essential concurrence lacking. But, when the counts set up the same cause of action, and not separate, distinct, or inconsistent grounds, a general verdict is proper, for the manifest reason that concurrence of the jury is not required as to minor facts or details of difference. The authorities all seem to recognize the distinction. Lancaster v. Ins. Co., supra; Parker v. Ry. Co., supra; Leu v. St. Louis Transit Co., supra; Illinois, etc., v. Linstroth, etc., 112 Fed. 737, 50 C. C. A. 504; Ranney v. Bader, 48 Mo. 539; Brady v. Connelly, 52 Mo. 19; Long v. Armsby Co., 43 Mo. App. 253.

We must therefore conclude the verdict in this case sufficient as a general one, and a finding as to the particular causative agency of the sudden stop of car nonessential, and not a proper issue to submit. If a unanimous finding in respect thereto had been made it would have been mere surplusage.

In cases where a general verdict may properly be returned and is so submitted, the practice is not to be commended of a submission in such a manner as to require inferential findings upon nonessential and immaterial details. Juries find sufficient difficulty in concurring unanimously upon controlling issues, and no more should be required of them. In the case at bar they should have been permitted to return a general verdict, and it was immaterial upon which count it was based. Further or more specific findings should not have been required.

[3] The fifth assignment complains of the sixth paragraph of the charge. The first two propositions thereunder confuse the plea of contributory negligence with the negligence of defendant. This paragraph of the charge was an affirmative presentation and submission of the issue of negligence vel non upon defendant's part with respect to operation or equipment, independent of pulling pin without turning angle cocks.

Plaintiff's position upon the car and the question of contributory negligence on his part with respect thereto are separate and distinct from an inference and finding of negligence upon part of defendant in relation to the separation of cars producing the sudden application of air and stop of car. The want of causal connection between the issue of contributory negligence and the inference of negligence upon defendant's part with respect to operation or equipment is so patent that further comment in regard thereto would be a matter of supererogation. Nevertheless it may be noted the issue of contributory negligence is submitted in the tenth paragraph in a manner to which no exception is taken.

[4] The additional propositions under the fifth assignment will be considered in connection with the sixth and seventh assignments, since they all relate to the same alleged ground of error, viz., that the court erred in submitting the doctrine of res ipsa loquitur pleaded in the third count, the

contention being that, independent of the act of the employé in pulling the coupling pin without turning angle cocks, there was no evidence either of improper operation or equipment of cars to warrant an inference of negligence.

At the time of the accident plaintiff was in the employ of defendant, serving as a section foreman, and, in the ordinary discharge of his duties, was riding on a gravel train, running between eight and ten miles an hour. The train consisted of a string of flat cars which had just been unloaded of gravel. The engine was facing north, at the south end of the train, and with the caboose at the north end. The train was moving in a northerly direction. Plaintiff was standing upon a flat car while the train was approaching Rosslyn switch, where some of the cars were to be cut out and left. Upon approaching the switch the car just north of the one upon which plaintiff was riding separated from the rest of the train, causing a separation or bursting of the connecting air hose, the result of which was to apply the air as in case of emergency, producing a sudden and abrupt stop of the train, throwing plaintiff northward and off the car. The engineer testified he slowed his train with a service (slight) application of air. When this application was made it appears the uncoupled cars separated, causing a separation or bursting of the air hose, the result of which was to apply instantly the air as in case of emergency and instantly stop the train.

To the claim of error in the submission of the issue it may be first answered that, independent of any affirmative evidence of improper operation or equipment, the circumstances attending the accident bring it clearly within the rule of res ipsa.

The train was under the management of defendant's servants, and the instant stop of a train is not an occurrence in the ordinary course of things, if those who have the control thereof use proper care in its operation and with respect to equipment. In such case, *in the absence of any explanation* by the defendant, it affords reasonable evidence that the instant stop was due to a want of ordinary care. Ky. Co. v. Geary, 144 S. W. 1045; Ry. Co. v. Hawk, 30 Tex. Civ. App. 142, 69 S. W. 1037 (W. of E. Ref.); Ry. Co. v. Young, 45 Tex. Civ. App. 430, 100 S. W. 993; Washington v. Ry. Co., 90 Tex. 314, 38 S. W. 764; McCray v. Ry. Co., 89 Tex. 168, 34 S. W. 95; Ry. Co. v. Fales, 33 Tex. Civ. App. 457, 77 S. W. 234; Ry. Co. v. Wood (Civ. App.) 63 S. W. 164; 1 Shearman & Redfield on Negligence (6th Ed.) §§ 58, 58b, 59; Scott v. London, etc., 3 H. & C. 596.

Chief Justice Erle, in Scott v. London, etc., supra, the leading case, states the rule in language repeatedly approved by our courts, as follows:

"There must be reasonable evidence of negligence; but where the thing is shown to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from want of care."

Of the adversely cited cases none are in point. The essentials of res ipsa were not present in any of them, and they may be readily distinguished by elementary law.

[5] To the claim of error in the submission of the issue noted under the third count it may be further and conclusively answered that there was affirmative evidence warranting an inference of negligence based on either improper operation or improper equipment.

The plaintiff's witness J. E. Haskell, an expert of wide experience in train equipment, testified to the effect that, under the circumstances of plaintiff's injury, the occurrence in question was unusual, and that the coming apart of the cars, the uncoupling, if the train was properly handled, could be produced by "nothing else in the world but a defective coupler or a defective car, or something the matter with that equipment; there would be a defect." This witness explained that the uncoupling of the cars would necessarily burst or part the air hose, if unseparated, and instantly apply the brakes and produce the sudden and abrupt stop testified about by plaintiff, and that this same result would be produced if the air hose was separated, but the air had not been confined by turning the angle cock.

Haskell further testified:

"That if the cars in question had been lying at a switch track for from ten days to two weeks in the weather, uninspected, and were taken from there and put onto this train and put to work, the tendency that that exposure would have on them would be to make them defective; all such conditions as that have a tendency to deteriorate and to work bad with the brakes, to make them defective. It has been proven by experience the world over that by the cars standing still or idle on a switch track they go to the bad, or get in bad, as the boys say, quicker than everyday service. The packing leather dries out in the cylinders, and the triple valve becomes gummed and dry. The tendency is in the partiçulars, as I have stated, to render same defective, unsound, and in bad order."

The defendant witness and employé W. E. Wise, a railroad operative of experience, testified that when an engine is handled in the customary and usual way, and there is no defect in the appliances, the cars are not intended to uncouple without something being done to them, and they will not of themselves uncouple where the cars are handled in the usual and ordinary way, and when all the equipment is free of defects they will not uncouple then of themselves.

The defendant's witness and employé Ed. Looney, another railroad operative of experience, testified that an engineer could so handle his engine as to cause the train to part. He further testified:

"It is true that there are defects in the machinery connected with the car that will sometimes cause them to uncouple; if there are de-

fects in the car, or it is exposed to the weather, it might cause it. Defects do cause cars to come uncoupled about their coupling apparatus. They are not intended to uncouple of themselves when they are made up, not that I know of. If they were worked in the usual and customary way, as far as I know, they won't come uncoupled."

Morris Geary, the plaintiff, testified that the cars which uncoupled were, on the morning in question, gotten from the side track at Rosslyn, loaded, and had been there for two or three weeks or more, and during that time said cars were not under shed; they were exposed to the weather; his section house was at that siding, and he did not see anybody inspect the cars, and that there were no employés down there for inspection purposes as far as he knew; that it was not within the line of his duty to inspect the cars, and he had nothing to do with inspecting them.

The witness further testified:

"The usual position for a man riding on a car is to stand; it is to stand on a car of a work train. I said I was standing about the middle of the car, and was facing north. * * * The stop on the occasion of my injury was made that quick (snaps fingers). I said it stopped instantaneously, and as it did so, of course, I was thrown; I was thrown clear off; * * * thrown north. * * * Before the time I was injured, I had been engaged in railroad service over 30 years. * * * In my experience in the railroad service I had not, before the time I was injured, encountered an abrupt stop such as on the day I was hurt, not personally, not on a work train. I had ridden many times on trains similar to this; when I was roadmaster I rode every day; some days as much as from 140 to 200 miles a day."

The witness testified that as he lay on the ground after his fall he saw the cars were standing apart, uncoupled, and the air hose had burst in two; was pulled apart—clear apart.

The defendant's testimony was in conflict with Geary's as to how long the cars had been on the side track at Rosslyn, exposed to the weather, but its testimony conceded that the cars had been on said siding, exposed to the weather, for at least four days before the accident, uninspected.

Geary further testified that as the train approached Rosslyn the purpose of the train crew was to switch off there certain foreign cars, including the car he was riding, but not the caboose or the car between it and the one he was riding; that, to do this, the train crew adopted the method of cutting off the caboose and the car next to it, while the train was in motion, and letting them run down the main track of their own momentum, and then, after putting in the foreign cars on the siding, for the train to return, couple onto the caboose and other car, and then proceed northward on its way; that, to this end, the brakeman, Savage, standing on the car next to him, gave a slow-down signal, and immediately after the accident happened.

Geary, after testifying to the slow-down signal as given by Savage, further testified:

"When two cars are coupled together (meaning the airline coupling) and the engineer slows down, those cars will come apart; * * * when those cars come apart, and if the hose does not come uncoupled, it (the air hose) will burst; it will tear the hose in two; * * * either part or burst."

In addition to the above, there was direct evidence of improper handling, in that plaintiff, Geary, testified, in effect, that the brakeman, Savage, one of defendant's train operatives, immediately after he gave the slow-down signal, reached over where the coupling was and raised up as a man would in pulling the pin, but that he did not uncouple the air line or turn the angle cock so as to confine the air, and that then, almost instantly, the sudden and abrupt stop came. Savage was not called by the defendant to testify.

From defendant's printed book of rules, proven to be in force at the time, plaintiff give in evidence the following rules respecting duties of its train operatives:

"Must inspect their brake apparatus carefully each trip, and report any repairs needed. They must keep pumps well packed, and drain main reservoirs regularly. * * * Must use the brake carefully, to avoid injury to passengers or freight. They must not use the emergency application unless it is really necessary, and must be especially careful to apply moderately when train is moving slowly. * * * See that there are no leaks in air pipes or connections, and that air-brake apparatus generally is in good working order. * * * When the engine has been coupled to the train, and has been charged with an air pressure of 70 pounds the engineman shall, at a signal from the inspector or trainmen, make a full service application of not less than 25 pounds reduction, and keep brake applied until the entire train has been inspected and the signal to release given. He must not leave the station until it has been ascertained that all brakes are released, and he has been so informed by the inspector or trainmen. This test must be made at all terminals, and after each change in the make-up of the train. * * * When the engine has been coupled, and gauge shows a sufficient pressure in train pipe, the trainman or inspector making the test will request the engineman to apply the brakes, and will then go to each car and observe the pistons to see that the brake is set. * * * When the last car is reached, if the brakes are set properly, he will give a signal to the engineman to release the brakes, and the person making the test will then examine each car, see that the brake releases, and on arriving at the engine will report to the engineman the number of brakes in good order and working. If any brakes will not release, or have leaks or broken rods, or other defects, which render it necessary, they must be cut out by closing stopcock in branch pipe and then bled, to insure that they will not stick. * * * In switching trains, the hose must not be pulled apart, but always be uncoupled by hand. * * * In making up trains, examine couplings and signal discharge valves to see if tight."

There was no evidence by defendant that the inspection or tests of the cars and equipment came up to the requirement of these rules, but the affirmative evidence of the engineer, Lingo, and conductor, Brown, was to the contrary. The inspection testified to by the inspector, Stringer, was made at Teague, five days before the accident.

The foregoing summary is sufficient to show there was abundant affirmative evidence of a circumstantial nature warranting an inference of negligence in either improper operation or equipment.

The fifth, sixth, and seventh assignments are therefore overruled, for the reasons: First, the fact of the casualty under the attendant circumstances was sufficient to warrant an inference of negligence under the doctrine of res ipsa; and second, independent of this rule, there was affirmative circumstantial evidence warranting an inference of negligence.

[6] Plaintiff, in his petition alleged:

"That plaintiff, at the time of said injuries, was an able-bodied, healthy, and industrious man, in the prime of life, well qualified and skillful in his work, and competent to fill, and has been accustomed to fill, sundry lucrative positions in the railroad service, such as roadmaster, section foreman, and the like, and he then had the capacity of earning, and had been accustomed to earning, to wit, as much as one hundred and fifty dollars ($150.00) per month, and he was at the time of aforesaid injuries receiving and earning for his services as foreman aforesaid a salary of fifty-five ($55.00) dollars per month, by that name, and also, as a perquisite and part of his pay for his services as such foreman, the valuable right, which was uniformly attached to such position, and which he regularly exercised, of boarding the employés of his section crew, and the benefits attached to said right, consisting of section houses therefor, free of rent, of the rental value of twelve dollars ($12.00) per month, which perquisite was established and certain, and from it and the benefits thereof with his said salary of $55 per month by that name, his earnings for his personal services in that behalf were then, to wit, of the average sum and value of one hundred and twenty-five ($125.00) dollars per month, of all which he has been deprived by the injuries aforesaid; for that, said boarders averaged at least 15 men per month, who paid for their board $15.50 per month each, against which his expenses for boarding, including hired help of $15 per month, did not exceed $12 per month each, so that his net gain therefrom, being readily ascertainable as aforesaid, amounted to at least $3.50 per month each, which he would not have earned, but for his position as foreman, and which was the result of such position and of his personal services in looking after and superintending said boarding."

At the trial plaintiff proved the averments as to the boarding of men and profits therefrom, and further testified that as roadmaster he had the capacity to earn, and had been accustomed to earn, as wages about $125 per month; that the position of section foreman on railroads generally and on the defendant's road, where he had been serving in that capacity for nearly three years, gave smaller wages by name, his under defendant being $55 per month, because there was uniformly attached to the position, as a perquisite and part of the pay of it, the right to board the men working under the section foreman; that in such case the section foreman would furnish no substantial capital, the section house being furnished free of rent by the employer, in plaintiff's case of the reasonable value of $10 per month; that the amounts owing to him by the men for board

were deducted by the defendant for him, so that there was no loss to him from bad debts; that the average number of men he boarded had been as much as 30, but was during the period he had been working for defendant, just before his injury, 15; that the right to board them was a uniform part, a perquisite, of the position of section foreman, and existing only as a part of the pay for that position; that he was by his injury rendered unable to follow the position of section foreman, so that by the injury the opportunity of thus boarding the men was lost to him the same as his wages proper of $55 per month; that he personally superintended and looked after the boarding of the men, morning, noon, and night; that the price customarily paid by railroads generally for services such as he was performing as section foreman was $55 a month and the privilege of boarding the men.

Error is assigned to the refusal of a special charge, which reads:

"In case your verdict should be for the plaintiff, you will not, in assessing his damages, take into consideration as an element of damage, or as bearing upon his earning capacity or loss thereof, any testimony concerning the alleged right of perquisite of boarding the members of his section crew, and profits to be earned therefrom."

The charge was properly refused, because it directed the exclusion of the testimony from consideration "as bearing upon his earning capacity or loss thereof." Ry. Co. v. Murphy, 49 Tex. Civ. App. 586, 109 S. W. 498 (W. of E. Ref.); Wallace v. Ry. Co., 195 Pa. 127, 45 Atl. 685, 52 L. R. A. 33. See, also, note and numerous cases cited in 52 L. R. A., at page 38; Wilkie v. I y. Co., 127 N. C. 203, 37 S. E. 204; Bloomington v. Chamberlain, 104 Ill. 268; 8 Am. & Eng. Ency. Law (2d Ed.) 649–654; Watson's Damages for Personal Injuries, §§ 482, 503, 504, 507.

In Wallace v. Ry. Co., supra, it was held that the profits of a boarding house conducted by one injured by negligence may be considered in determining the plaintiff's earning capacity. The adversely cited case of Goodhart v. Ry. Co., 177 Pa. 1, 35 Atl. 191, 55 Am. St. Rep. 705, was explained and limited, and, in discussing the admissibility of the evidence, the court said:

"Profits derived from capital invested in business cannot be considered as earnings, but in many cases profits derived from the management of a business may properly be considered as measuring the earning power. This is especially true where the business is one which requires and receives the personal attention and labor of the owner."

Had the charge in question simply excluded the testimony as an element of damage, it would perhaps have been a proper one, as such evidence is admissible, not as a direct element of recoverable damage, but on the issue of lost earning capacity. The adversely cited cases are all referable to the rule adopted in some jurisdictions that the profits of a business enterprise combining

capital and labor do not constitute a legitimate basis for estimating the earning power of one personally contributing the element of labor where he has been wrongfully injured so as to be unable to furnish the same. The better rule, however, seems to be, and has been adopted in this state, that, even in such case, profits of such a business are admissible, not as an element of recoverable damage, but as tending to show possession of business capacity, and the extent of the decrease of capacity to work and pursue his customary employment and as an aid in estimating a fair and just compensation for decreased capacity. Ry. Co. v. Murphy, supra; Wallace v. Ry. Co., supra, and note in 52 L. R. A. 33, and numerous cases cited; 8 Am. & Eng. Ency. Law (2d Ed.) 654; Watson's Damages for Personal Injuries, §§ 482, 503, 504, 507.

The correctness of the twelfth paragraph of charge upon the measure of damage is not questioned. It does not submit as an element of recoverable damage the loss of the profits resulting from boarding employés. Under the authorities quoted, the testimony was admissible as bearing upon plaintiff's earning capacity and loss thereof. This is especially true in view of the fact that here there was no combining of capital with labor as in the adversely cited cases.

[7, 8] Error is assigned to the overruling of a special exception addressed to the sufficiency of the allegation of negligence contained in the third count. The allegation is general, which is permissible where the doctrine of res ipsa loquitur is applicable, and it was so held upon the former appeal of this case. Ry. Co. v. Geary, 144 S. W. 1045. Under our holding the allegations are sufficient and the rule announced upon that appeal is the law of this case, and upon a subsequent appeal will not be reconsidered or overruled, even if it appears to be erroneous. Ry. Co. v. Redus, 55 Tex. Civ. App. 205, 118 S. W. 208 (W. of E. Ref.); Tinsley v. Bottom (Civ. App.) 155 S. W. 1053; Thompson v. Ry. Co., 168 U. S. 451, 18 Sup. Ct. 121, 42 L. Ed. 539.

The rule there announced, that generality of allegation in such cases is permissible, is deemed correct and supported by all of the authorities. Ry. Co. v. Hawk, Ry. Co. v. Young, Washington v. Ry. Co., McCray v. Ry. Co., and Ry. Co. v. Wood, all supra.

[9] Even if the exception was erroneously overruled, it is not apparent any injury resulted from such improper ruling, ·and it will not be presumed. Wells Fargo Co. v. Benjamin, 165 S. W. 120. Therefore, in any event, the action taken furnished no ground for reversal. Rule 62a (149 S. W. x).

[10] It is next and last contended the verdict of $20,000 returned in this case is excessive, and based upon prejudice, sympathy, or other improper motive. Regard being had to that view of the testimony which it was the jury's province to adopt, it cannot be so regarded. At the time of the injury, plaintiff was a strong, healthy, and industrious man, 49 years of age, being, at the date of trial, 52 years old. His probable length of life was 21 years more. It was proved he had been accustomed to earn $125 per month as roadmaster and as section foreman, with the perquisites attached to that position of boarding the men, about $100 per month, and, at times, considerable upwards of that.

The testimony of plaintiff and of his physician was to the effect that plaintiff's right arm was paralyzed, so that it had been since the injury, and would be for his life, worthless and useless; that it was complicated by in extraordinary condition, under which it had to be always tightly bandaged, as, when taken out of the sling, it would jump up and down, and was unbearable until replaced in a tightened bandage. Owing to this condition, plaintiff had been unable to earn anything since his injury, and was permanently incapacitated. He had needed and received nursing attention since the injury, being unable to dress or undress himself or to prepare his food, or to sleep undisturbed, which conditions the jury was warranted in finding would continue. He had lost weight, and was undermined in health and in his nervous system. It was proven that a proper treatment of his injury would require the use of electricity for the rest of his life, the reasonable cost of which would be $250 per year, and would continue to require nursing and medical attention.

Taking into consideration this testimony, the verdict of $20,000 is not regarded as excessive, and there is nothing, aside from the amount, to in any wise indicate that it was the result of any improper influence or motive.

Affirmed.